## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| MELINDA LUCERO,<br><br>                    *Plaintiff,*<br><br>        *v.*<br><br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY, STATE FARM FIRE<br>AND CASUALTY COMPANY, and<br>MITCHELL INTERNATIONAL, INC.<br><br>                    *Defendants.* | Case No. _____<br><br><br>CASE BELOW:<br>Case No. D-202-CV-2023-01383<br>County of Bernalillo, Second Judicial<br>District Court |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant State Farm Mutual Automobile Insurance Company ("State Farm Mutual") hereby removes the above-captioned action from the County of Bernalillo, Second Judicial District Court to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, and pursuant to 28 U.S.C. § 1441 and 1446. In support of this Notice of Removal, State Farm Mutual states as follows:

**I.      PROCEDURAL HISTORY.**

1.      On February 27, 2023, Plaintiff Melinda Lucero ("Plaintiff") filed in the County of Bernalillo, Second Judicial District Court, a complaint ("Complaint" or "Compl.") asserting individual claims against State Farm Mutual, Luis Rimbert ("Rimbert") and Griselda Valenzuela ("Valenzuela").  A copy of the Complaint is attached hereto as Exhibit A.

2.      The Complaint alleged that Plaintiff was injured in an automobile accident when Rimbert negligently caused the vehicle he was operating to rear-end Plaintiff's vehicle. Compl. ¶¶ 10–21. The Complaint further alleged that Valenzuela was the owner of the vehicle operated by Rimbert, and that Valenzuela's vehicle was uninsured. *Id.* ¶¶ 12–13, 47–49.

3.      According to the Complaint, Plaintiff, Rimbert and Valenzuela all reside in New Mexico. *Id.* ¶¶ 2, 4–5.

4.      The Complaint further alleged that at the time of the accident Plaintiff was insured by State Farm Mutual under four separate auto policies.  *Id.* ¶¶ 22-23.  According to the Complaint, State Farm Mutual took the position that Plaintiff had $100,000/$300,000 in uninsured/underinsured ("UM/UIM") coverage under one of the four policies (the "Kia Policy"), and that Plaintiff signed forms declining UM/UIM coverage under the remaining three policies. *Id.* ¶¶  24–37. The Complaint alleged that those forms "did not inform Lucero about stacking of UM/UIM coverage." *Id.* ¶¶ 40, 43, 46.

5.      According to the Complaint, Plaintiff tendered to State Farm Mutual approximately $49,000 in medical bills and demanded that State Farm Mutual pay the $100,000 in UM/UIM coverage provided under the Kia Policy. *Id.* ¶ 52. Plaintiff alleges that State Farm Mutual responded with an offer that was substantially less than Plaintiff's medical bills and that State Farm Mutual "advised that it only considered $17,402.98 of the medical bills Lucero submitted." *Id.* ¶¶ 54, 57.

6.      The Complaint asserted that State Farm Mutual indicated that "it uses a 'Medicare schedule' to evaluate the reasonableness of medical bills submitted." *Id.* ¶ 58. According to Plaintiff, State Farm Mutual's alleged use of the "Medicare schedule" is improper. *Id.* ¶¶ 59–63.

7.      Based on these and other allegations, the Complaint asserted claims against Rimbert for negligence, against Valenzuela for negligent entrustment, and against State Farm Mutual for: declaratory judgments declaring that Plaintiff was entitled to UM/UIM coverage under the other three insurance policies; recovery of UM/UIM benefits under the policies; breach of

contract; bad faith; alleged violations of the New Mexico Unfair Claims Practices Act; and negligent misrepresentation. *Id.* ¶¶ 65–159.

8.     The Complaint did not include any allegations regarding a putative class or any class certification request.

9.     On July 10, 2024, Plaintiff filed a motion for leave to file an amended complaint, a copy of which is attached hereto as Exhibit B.

10.     According to Plaintiff's motion, "[d]uring discovery in this case, Plaintiff uncovered certain evidence demonstrating that State Farm uses the amount Medicare will pay for a service to determine the 'reasonableness' of a medical bill, with the 'reasonable' amount being calculated as two-times the Medicare rate." *Id.* at 2.

11.     State Farm Mutual filed an opposition to Plaintiff's motion for leave to amend.

12.     On October 2, 2024, the court granted Plaintiff's motion for leave to amend. The same day, Plaintiff filed her First Amended Complaint for Class Action and to Recovery Uninsured/Underinsured Motorist Benefits ("FAC"). A copy of Plaintiff's FAC is attached hereto as Exhibit C.

13.     The FAC does not allege any claims against Rimbert or Valenzuela and does not identify them as defendants. *See id.*

14.     With the FAC, Plaintiff continues to allege claims against State Farm Mutual, and adds two new defendants: State Farm Fire and Casualty Company ("State Farm Fire"); and Mitchell International, Inc. ("Mitchell").

15.     The FAC asserts that the alleged use of twice the rates paid by Medicare to assess the reasonableness of medical expenses is unlawful because "New Mexico law provides that the billed amount of a medical bill is used to determine damage." *Id.* ¶ 43; *see also id.* ¶ 168 (alleging

that the use of twice the rates paid by Medicare as a benchmark is contrary to New Mexico law, "including specifically the collateral source rule").

16.    According to the FAC, State Farm Mutual uses a software program—DecisionPoint—that is provided by defendant Mitchell to assess medical expenses using the twice-Medicare metric. *Id.* ¶¶ 44–45.

17.    The FAC further alleges that the State Farm entity defendants engaged in a "joint venture" and a "civil conspiracy" to underpay medical expense claims. *Id.* ¶¶ 49–60.

18.    Although the initial Complaint alleged that State Farm Mutual was taking the position that Plaintiff had UM/UIM coverage only under the Kia policy, the FAC alleges that, "[a]s of this filing," for both the Nissan policy and the F350 policy "State Farm Auto has reformed the [] Policy to provide UM/UIM bodily injury limits which matched the liability injury limits, specifically 100/300 limits." *Id.* ¶¶ 26, 30. Plaintiff further alleges in the FAC that "[t]here is $300,000 stacked UM/UIM coverage available to Plaintiff under the State Farm Policies." *Id.* ¶ 196.

19.    The FAC seeks recovery under numerous causes of action, including: breach of contract (Count III); negligence (Count II); breach of the covenant of good faith and fair dealing (Count IV); violation of the New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to -30 (Count V); violation of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26 (Count VI); and unjust enrichment (Count VII). The FAC also seeks declaratory and injunctive relief (Counts I & VIII), and alleges a civil conspiracy among the defendants (Count IX). FAC ¶¶ 81–199.

20.    The FAC requests certification of an exceedingly broad class defined as:

All persons (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, insured for payment of medical bills resulting from

the ownership, maintenance, or use of a motor vehicle under an auto policy issued by State Farm in New Mexico.

*Id.* ¶ 61.

21.     In addition, the FAC alleges that the proposed class also includes a "Subclass I" defined as:

> All Class Members (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, who paid a premium for UM/UIM coverage under an auto policy issued by State Farm in New Mexico but received a policy wherein State Farm would only pay medical bills based on its Medicare Scheme and not New Mexico's collateral source rule or based upon the insured's legal right to recover medical costs.

*Id.* ¶ 62.

22.     The FAC also identifies a second purported subclass—"Subclass II"—which is defined as:

> All Class Members (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, insured under UM/UIM coverage issued by State Farm in New Mexico who suffered a bodily injury and had a medical bill they submitted as part of their UM/UIM bodily injury claim reduced from State Farm's use of the Medicare Scheme.

*Id.* ¶ 63.

23.     As set forth below, State Farm Mutual has satisfied all procedural requirements for removal based on Plaintiff's allegations and the additional allegations set forth herein.  In addition, federal jurisdiction lies here and this case is properly removable to this Court under CAFA pursuant to 28 U.S.C. §§ 1332(d) and 1453.

24.     CAFA jurisdiction exists because the proposed class action: (1) includes alleged class members whose citizenship is diverse from that of State Farm Mutual; (2) has at least 100 putative class members; and (3) places an aggregate amount in controversy in excess of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)–(6).

## II.     STATE FARM MUTUAL HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

25.     State Farm Mutual's removal of this action to this Court is timely. Because the initial Complaint named non-diverse parties as defendants and did not seek class certification, the action was not initially removable. Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Importantly, "a defendant may not remove a case that was originally non-removable based on a motion to amend a complaint even if the proposed amended complaint invokes federal jurisdiction." *Navarro v. Farmers Ins. Grp.*, No. 11-CV-25 JAP/WDS, 2011 WL 13285713, at *5 (D.N.M. May 31, 2011)

26.     Accordingly, State Farm Mutual properly waited for the ruling on Plaintiff's opposed motion for leave to amend, and is removing the matter within thirty days of the granting of that motion and Plaintiff's filing of the FAC. Thus, the removal is timely.

27.     Venue is proper in this Court because the County of Bernalillo, Second Judicial District Court is located in the District of New Mexico. *See* 28 U.S.C. § 1441(a) (a state-filed action subject to federal jurisdiction may be removed "to the district court … for the district and division embracing the place where such action is pending").

28.     As required under 28 U.S.C. § 1446(a), State Farm Mutual has attached hereto as Exhibit D copies of all process, pleadings, and orders served upon State Farm Mutual with respect

to this action.[1] State Farm Mutual has also attached as Exhibit E a copy of the County of Bernalillo, Second Judicial District Court docket sheet for this case.

29.     As required under 28 U.S.C. § 1446(a), a copy of this Notice of Removal is being served upon Plaintiff's counsel, and a copy is being filed with the Clerk of the County of Bernalillo, Second Judicial District Court.

## III.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION UNDER CAFA.

30.     "In enacting CAFA, Congress intended to 'expand substantially federal court jurisdiction over class actions.' . . . Thus, 'its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014) (citations omitted). Importantly, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

31.     This Court has diversity jurisdiction under CAFA over any asserted class action[2] that: (1) includes at least one class member whose citizenship is diverse from that of the defendant; (2) has at least 100 putative class members; and (3) involves an aggregate amount in controversy of $5,000,000 or more. *See* 28 U.S.C. § 1332(d)(2), (d)(5)–(6).[3]

---

[1] Because this Notice is a public filing, Exhibit D does not include a small number of documents that were filed under seal in the County of Bernalillo, Second Judicial District Court action. In accordance with D.N.M. Local Rule 81.1, State Farm will seek leave within 28 days of the date of this filing to file those documents under seal in this Court.

[2] A "class action" includes any civil action filed under Federal Rule of Civil Procedure 23 or any "similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). Plaintiff asserted her class allegations pursuant to the New Mexico class action rule. *See* FAC ¶¶ 61–63 (citing Rule 1-023 NMRA).

[3] State Farm Mutual's removal of this case under CAFA in no way concedes that this case is appropriately brought as a class action or that a class could be certified here. To the contrary,

32.     CAFA permits "any defendant to remove a qualifying action without regard to the residence or consent of other defendants." *Prime Care of Ne. Kan., LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285 (10th Cir. 2006).

33.     State Farm Mutual denies that Plaintiff in this action has asserted any viable claims, denies all liability and damages in this action, and denies that any class could properly be certified. However, based on Plaintiff's purported claims and asserted damages, State Farm Mutual alleges in good faith that all requirements for federal jurisdiction under CAFA are met here and that the case is properly before this Court.

### A.     The Minimal Diversity Requirement is Satisfied.

34.     CAFA's minimal diversity requirement is satisfied. Plaintiff alleges that she resides in Bernalillo County, New Mexico. FAC ¶ 2. Residence is *prima facie* evidence of domicile, and domicile determines citizenship. *See, e.g.*, *State Farm Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("[T]he place of residence is *prima facie* the domicile."); *Johnston v. Cordell Nat'l Bank*, 421 F.2d 1310, 1312 (10th Cir. 1970) ("For purposes of jurisdiction of Federal District Courts on the grounds of diversity of citizenship, the terms 'domicile' and 'citizenship' are synonymous.").

35.     State Farm Mutual, in contrast, is not a citizen of New Mexico. Instead, State Farm Mutual is a citizen of the State of Illinois, as it is a mutual automobile insurance company that is organized under the laws of the State of Illinois and maintains its principal place of business in that State. *Grynberg v. Kinder Morgan Energy Partners L.P.*, 805 F.3d 901, 905 (10th Cir. 2015)

---

federal jurisdiction of a case removed under CAFA continues to exist even if no class is ever certified. *See, e.g.*, *Morgan v. GEICO Indem. Co.*, No. 14-cv-03257-PAB-KLM, 2016 WL 879720, at *2 n.4 (D. Colo. Mar. 8, 2016).

("For diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located.").

36.    Because Plaintiff and State Farm Mutual are citizens of different states, CAFA's minimal diversity requirement is satisfied.

**B.    The Asserted Class Size Requirement Is Satisfied.**

37.    CAFA's requirement that the putative class include at least one hundred members is also met.

38.    The proposed class is comprised of: "All persons (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, insured for payment of medical bills resulting from the ownership, maintenance, or use of a motor vehicle under an auto policy issued by State Farm in New Mexico."  FAC ¶ 61.

39.    Plaintiff further alleges that this proposed class includes a "Subclass I" defined as:

> All Class Members (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, who paid a premium for UM/UIM coverage under an auto policy issued by State Farm in New Mexico but received a policy wherein State Farm would only pay medical bills based on its Medicare Scheme and not New Mexico's collateral source rule or based upon the insured's legal right to recover medical costs.

*Id.* ¶ 62.

40.    Plaintiff's FAC alleges that State Farm Mutual supposedly "has utilized" what Plaintiff refers to as "the Medicare Scheme" to determine the reasonableness of medical bills on UM/UIM claims in New Mexico since January 1, 2018. *See id.* ¶ 162. State Farm Mutual accordingly understands the putative subclass as defined in Paragraph 62 of the FAC to include anyone who paid a premium for UM/UIM coverage under an auto policy issued by State Farm Mutual in New Mexico from January 1, 2018 to the present.

41.     The claims that Plaintiff individually seeks to assert in her FAC arise out of a motor vehicle accident that occurred on March 1, 2020. *Id.* ¶¶ 1, 14. According to State Farm Mutual's records, in that one year of 2020 alone there were more than 500,000 State Farm Mutual-issued policies with UM/UIM coverage in New Mexico.

42.     In addition, Plaintiff also seeks certification of a purported "Subclass II," defined as follows:

> All Class Members (and their heirs, executors, administrators, successors, and assigns), from January 1, 2018 to present, insured under UM/UIM coverage issued by State Farm in New Mexico who suffered a bodily injury and had a medical bill they submitted as part of their UM/UIM bodily injury claim reduced from State Farm's use of the Medicare Scheme.

*Id.* ¶ 63.

43.     According to State Farm Mutual's records, during the three-year period from just 2020 through 2022—which includes the date of Plaintiff's accident—there were over 1,000 UM/UIM claims submitted to State Farm Mutual under policies issued by State Farm Mutual in New Mexico in which: (a) the claimant alleged he or she had suffered bodily injury; (b) the claimant submitted medical bills; (c) the total amount paid to the claimant on his or her UM/UIM claim was less than the limits of the UM/UIM coverage provided by the applicable policy or policies; and (d) State Farm Mutual utilized Mitchell's DecisionPoint software, including its "Medicare module," in connection with its evaluation of the claim.

44.     Plaintiff herself alleges that "[t]he members of the Class are so numerous that joinder of all members of the Class is impracticable." *Id.* ¶ 65.

45.     The alleged class therefore satisfies the 100-member minimum class size requirement under CAFA.

    **C.**    **The Asserted Class Claims Place More Than $5,000,000 In Controversy.**

46.    Under 28 U.S.C. § 1446(a), a "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. Evidence as to the amount in controversy is not required unless, *after* the defendant has filed the notice of removal, "the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

47.    "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "[T]he term 'in controversy' has never required a party seeking to invoke federal jurisdiction to show that damages '*are* greater' or will *likely* prove greater 'than the requisite amount' specified by statute.... Instead, the term has required a party seeking federal jurisdiction to show only and much more modestly that 'a fact finder *might* legally conclude' that damages exceed the statutory amount." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911–12 (10th Cir. 2016) (citation omitted; emphasis in original). "Only if it is 'legally certain' that the recovery or cost of complying with judgment will be 'less than the jurisdictional floor may the case be dismissed.'" *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (quoting *McPhail*, 529 F.3d at 955).

48.    State Farm certainly disputes that Plaintiff has stated viable claims, or that any damages whatsoever are owed to Plaintiff or the asserted class. Under the foregoing standards, however, the amount in controversy requirement clearly is satisfied.

49.    Plaintiff does not allege a specific amount of damages sought, but seeks various forms of monetary relief, including damages for "[p]hysical pain and mental suffering, past and

11

future,"[4] "[m]edical bills, past and future," direct and consequential damages resulting from the alleged breach of contract, disgorgement of "the value of the UM/UIM coverage and Medical Payments coverage premiums received," punitive damages, "treble damages pursuant to Section 57-12-10," and statutory attorneys' fees and costs. FAC ¶¶ 162–64 and pp. 31–32.

50.      Looking solely at Plaintiff's claim seeking disgorgement of the value of the UM/UIM coverage premiums received by State Farm from the members of the proposed class, the $5 million threshold is clearly satisfied. In 2020 alone, the total written premium for UM/UIM coverage on State Farm Mutual-issued policies in New Mexico was more than $40 million. Plaintiff's FAC appears to seek disgorgement of the entire amount of UM/UIM coverage premiums received by State Farm, but even if Plaintiff is seeking only 15% of that amount, the relief sought for a single year of the proposed multi-year class would easily exceed the $5 million CAFA threshold.

51.      In addition, Plaintiff's claim for damages based on the alleged underpayment of medical expenses separately satisfies the $5 million threshold.

52.      As previously noted, during the three-year period from just 2020 through 2022, there were over 1,000 claims for bodily injury under the UM/UIM coverage of New Mexico-issued State Farm Mutual policies where the amount paid under the UM/UIM coverage was below the applicable policy limits for the coverage and State Farm Mutual utilized the DecisionPoint software, including its "Medicare module," in connection with its evaluation of the claim. The

---

[4] It appears Plaintiff is seeking damages for pain and suffering only on her own behalf. Nevertheless, looking only at Plaintiff's individual claim, the amount in controversy is significant: Plaintiff claims she has $300,000 in coverage available, and she seeks both treble damages and attorneys' fees.

total amount of UM and UIM benefits paid on those claims during this three year period was over $16 million.

53.    Plaintiff alleges that her medical bills were $49,000 and that State Farm Mutual, based on its alleged used of twice-Medicare, determined the reasonable value of the medical services received by Plaintiff to be $17,402.98. FAC ¶¶ 37–40. In other words, Plaintiff alleges that State Farm reduced her medical bills, based on its alleged use of two-times Medicare to evaluate the reasonableness of those medical bills, by approximately $31,000. If, as Plaintiff alleges, her claim is typical of the proposed class (*id.* ¶ 66), such that the amounts paid on UM/UIM bodily injury claims of putative class members generally reflect a reduction of approximately $31,000 from the amounts billed by their medical providers, then the compensatory damages sought by the proposed class as a whole for just the period from 2020 through 2022 would exceed $31 million. To reach the $5 million jurisdictional threshold only a $5,000 reduction in the billed amounts would be required.

54.    Plaintiff's additional claims for relief confirm that the amount in controversy far exceeds the jurisdictional minimum.

55.    "As a general matter, '[p]unitive damages may be considered in determining the requisite jurisdictional amount.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (citation omitted). Under New Mexico law, punitive damages may be available "when the insurer's conduct was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton." *Immanuel Presbyterian Church of Albuquerque, New Mexico v. Church Mut. Ins. Co., S.I.*, No. 1:20-CV-00878-KWR-KRS, 2022 WL 4079399, at *9 (D.N.M. Sept. 6, 2022). Although State Farm certainly denies the allegations, Plaintiff alleges here that "State Farm's conduct related to its use

of the Medicare Scheme to determine the reasonableness of medical bills was intentional, in bad

faith, malicious, willful, wanton, fraudulent, and based on dishonest business judgments and/or in

reckless disregard of Plaintiff's and Class Members' rights." FAC ¶ 99. In considering the value

of the punitive damages claim, awards up to nine times the amount of compensatory damages may,

in appropriate cases, be permissible. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408,

425 (2003); *see also White v. Lawrence*, No. 14-CV-429 MCA/KK, 2015 WL 13651167, at *4

(D.N.M. Sept. 11, 2015) (approving use of "less than a 4 to 1 punitive-damages-to-alleged-

compensatory-damages ratio" in valuing amount in controversy).

56.     Plaintiff's claim for treble damages may also be considered. *See Woodmen of World

Life Ins. Soc'y v. Manganaro,* 342 F.3d 1213, 1218 (10th Cir. 2003) ("Because the [New Mexico]

UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of

attorneys' fees, in addition to compensatory and treble damages, should have been considered in

determining whether Woodmen satisfied the jurisdictional amount.").

57.     In addition, "[a] reasonable estimate of attorneys' fees may be included in the

amount-in-controversy calculation where their recovery is permitted by statute." *Buscema v. Wal-

Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1328 (D.N.M. 2020) (citing *Miera v. Dairyland Ins. Co.*,

143 F.3d 1337, 1340 (10th Cir. 1998)). As already noted, Plaintiff here seeks an award of

attorneys' fees pursuant to NMSA § 57-12-10.

58.     For all the foregoing reasons, State Farm Mutual has demonstrated that all

prerequisites for CAFA jurisdiction are met and removal of this action is proper pursuant to 28

U.S.C. § 1441.

WHEREFORE, Defendant State Farm Mutual Automobile Insurance Company hereby removes this action from the County of Bernalillo, Second Judicial District Court to this Court.

Dated:  October 21, 2024

Respectfully submitted,

MILLER STRATVERT P.A.

By */s/ Todd A. Schwarz*
    Todd A. Schwarz
    Post Office Box 25687
    Albuquerque, NM 87125
    Telephone: (505) 842-1950
    Facsimile: (505) 243-4408
    tschwarz@mstlaw.com
    *Attorney for Defendant State Farm*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of October, 2024, a copy of the foregoing was electronically filed through the CM/ECF system, and that a copy of the foregoing was sent via email to the following:

Bryan Williams
WILLIAMS INJURY LAW, P.C.
4801 All Saints Rd. NW
Albuquerque, NM 87120
505-594-4444
505-214-5990 fax
bryan@bryan4results.com

Andrea D. Harris
VALLE, O'CLEIREACHAIN,
ZAMORA & HARRIS P.C.
1805 Rio Grande Blvd. NW, Suite 2
Albuquerque, NM 87104
(505) 888-4357
(505) 883-5613 (fax)
adh@vozlaw.com

15

Nikko Harada
Christopher P. Winters
HARADA & WINTERS LLC
P.O. Box 65659
Albuquerque, NM 87193-5659
505-484-6695
nharada@hwlawnm.com
cwinters@hwlawnm.com

Geoffrey R. Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints RD NW
Albuquerque, NM 87120
geoff@geoffromerolaw.com

Kevin Holmes
HOLMES LAW FIRM, P.C.
5203 Juan Tabo Blvd. NE, Suite 2E
Albuquerque, NM 87111
(505) 433-1947
Kevin@holmesnm.com

*Attorneys for Plaintiff*


*/s/ Todd A. Schwarz*
Todd A. Schwarz